UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAQUEL P.,[1] | Case No.: 22cv2024-BEN-SBC |
| Plaintiff, | **REPORT AND RECOMMENDATION GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR JUDICIAL REVIEW** |
| v. | |
| KILOLO KIJAKAZI, Commissioner of the Social Security Administration, | |
| Defendant. | **[ECF No. 17]** |

This report and recommendation is submitted to the United States District Judge Roger T. Benitez pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California.

Raquel P. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final administrative decision of the Commissioner of the Social Security Administration ("Commissioner") regarding Plaintiff's application for supplemental security income payments. (ECF No. 1 at 2.) The Administrative Law Judge

---

[1] Pursuant to Civil Local Rule 7.1(e)(6)(b), "[o]pinions by the Court in [Social Security cases under 42 U.S.C. § 405(g) (2022)] will refer to any non-government parties by using only their first name and last initial."

("ALJ") found that Plaintiff is not disabled since the application date, January 16, 2020, and denied Plaintiff's claim for benefits. (AR at 60-71.)

Now pending before the Court is Plaintiff's Motion for Judicial Review, filed on July 12, 2023. (ECF No. 17.) For the reasons set forth below, the Court **RECOMMENDS** that judgment be entered **REVERSING** the decision of the Commissioner and **REMANDING** this matter for further administrative proceedings consistent with the findings presented herein.

## I.     PROCEDURAL BACKGROUND

On January 16, 2020, Plaintiff applied for Supplemental Social Security Income ("SSI") under Title XVI of the Social Security Act. (AR at 60.) She alleged disability beginning October 1, 2006 and stated in her Disability Report that she was prevented from working due to "shoulder problems, knee problems, back problems, fibromyalgia, and depression." (AR at 60, 223.) Plaintiff's application was denied on October 23, 2020, and again on reconsideration on February 23, 2021. (AR at 60.) On reconsideration, Plaintiff also stated that she suffered from achilles tendonitis and carpal tunnel syndrome. (AR at 37.)

On April 1, 2021, Plaintiff submitted a written request for a *de novo* hearing, which was granted on April 9, 2021. (AR at 111.) On September 29, 2021, ALJ Howard Treblin presided over the hearing. (AR at 3.) Plaintiff appeared via telephone, represented by her attorney, Kaylin Sangimino. (*Id*. at 3, 60.) Plaintiff and an impartial vocational expert, Luis Mas, testified at the hearing. (*Id*.) During the hearing, Plaintiff amended the onset date of her disability from October 1, 2006 to the application date, January 16, 2020. (AR at 12.)

On January 28, 2022, ALJ Treblin denied Plaintiff's claim for disability benefits, finding that she was not disabled because she was capable of "lift[ing]/carry[ing] up to 50 pounds occasionally and lift[ing]/carry[ing] 25 pounds frequently; stand[ing]/walk[ing] for 6 hours in an 8-hour work day and sit[ting] for 6 hours in an 8-hour work day." (AR at 64-65, 71.) Plaintiff subsequently submitted a Request for Review to the Appeals Council on February 1, 2022. (AR at 80, 172-74.) The Appeals Council denied review on October 19,

2022. (AR at 77; ECF No. 17 at 1.) Having exhausted all administrative remedies, Plaintiff brought this timely civil action, seeking judicial review pursuant to 42 U.S.C. § 405(g) (2022). (*See* ECF No. 1.)

## II.   SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, ALJ Treblin followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520 (2022). At step one, ALJ Treblin found that Plaintiff had not engaged in substantial gainful activity since January 16, 2020, the application date. (AR at 62.) At step two, ALJ Treblin found that Plaintiff had the following severe impairments: (1) dysfunction - major joints; (2) degenerative disc disease; and (3) fibromyalgia. (*Id*.) The ALJ also found non-severe impairments of osteoarthritis of the knees, chronic rhinosinusitis, and "major depressive disorder, bipolar[,] and related disorders." (AR at 62-63.) ALJ Treblin found the impairments as non-severe because there was "insufficient evidence in the record to show the alleged impairment result[ed] in more than a minimal effect on the claimant's ability to perform work activity . . ." (AR at 63.) ALJ Treblin proceeded to consider Plaintiff's impairments at step three of the sequential process.

At step three, ALJ Treblin found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in the relevant section of the Commissioner's Listing of Impairments.[2] (AR at 64.) In support of this finding, ALJ Treblin stated that "[p]articular attention was given to listings 1.15 and 1.16 for disorders of the skeletal spine. However, the available medical evidence did not demonstrate signs of nerve root irritation, or tension, consistent with nerve root compromise." (AR at 65.) After consideration of the entire record, ALJ Treblin determined

---

[2] If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR §§ 404.1509 and 416.909), the claimant is deemed disabled. If it does not, the analysis proceeds to the next step.

that Plaintiff had the RFC to "lift/carry up to 50 pounds occasionally and lift/carry 25 pounds frequently; stand/walk for 6 hours in an 8-hour work day and sit for 6 hours in an 8-hour work day." (*Id*.) In addition, ALJ Treblin included limitations of "frequent postural activities; and [avoidance of] concentrated exposure to hazards such as unprotected heights and moving machinery" due to Plaintiff's neck pain and the side effects of her medication. (AR at 65, 68.) ALJ Treblin determined Plaintiff's RFC based on "the totality of the evidence in the record." (AR at 69.)

ALJ Treblin determined at step four that Plaintiff did not have any past relevant work because she last worked a part time job for only three months.[3] (AR at 69.) ALJ Treblin concluded, however, that considering Plaintiff's age, education, work experience and RFC, "there [were] jobs that existed in significant numbers in the national economy that the claimant [could] perform." (*Id*.) The ALJ accepted the testimony of the vocational expert, who said Plaintiff could perform the requirements of hand packager (D.O.T. 920.587-018), store laborer (D.O.T. 922.687-058), and dining room attendant (D.O.T. 311.677-010). (AR at 70.) ALJ Treblin, therefore, concluded that Plaintiff has not been disabled since the date of application, January 16, 2020. (*Id*.)

### III.   DISPUTED ISSUES

The first issue is whether ALJ Treblin properly evaluated the following conditions at step two of the Commissioner's evaluation process: (1) Osteoporosis; (2) Tendinosis of the right shoulder; (3) Achilles tendonitis; (4) Carpel tunnel syndrome; and (5) Knee impairment. The second issue is whether ALJ Treblin properly evaluated the medical opinions of Dr. Guefen, Dr. Tran, Dr. Kalmar, and Dr. Gleason. Lastly, at issue is whether Plaintiff's RFC was properly determined. The Court considers each issue below.

/ / / /

---

[3] ALJ Treblin stated that Plaintiff last worked in 1982, however other sources state her last job was in 2006. (AR at 69, 200.) The inconsistency does not change the outcome of this decision.

## IV.    STANDARD OF REVIEW

On appeal, the Court reviews claims for SSI benefits under Title XVI of the Social Security Act either for an absence of substantial evidence supporting the ALJ's decision or for legal error. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is "more than a mere scintilla but less than a preponderance" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing 42 U.S.C. § 405(g)). It is therefore the Court's duty to review the entire record and determine whether substantial evidence exists to support the ALJ's findings. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). However, the Court may not make independent findings: it is limited to reviewing the determinations presented by the ALJ in their decision. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("[W]e can affirm the agency's decision to deny benefits only on the grounds invoked by the agency . . . . "). If the evidence in the record reasonably supports the ALJ's decision, the decision will be upheld. *Andrews*, 53 F.3d at 1039-40 (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)) ("We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation."). Furthermore, the Court may affirm the ALJ's decision even if the ALJ committed error, so long as the error is harmless. *Ford v. Saul*, 950 F.3d 1141 (9th Cir. 2020). A harmless error is one that is inconsequential to the ultimate decision, *id.*, or that is not prejudicial to the claimant, *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

## V.    DISCUSSION

### A.    Whether the ALJ Erred at Step Two of the Commissioner's Five-Step Sequential Evaluation Process

At step two of a disability analysis, the ALJ determines whether the claimant has a medically determinable impairment that is severe or a combination of impairments that is severe. 20 C.F.R. § 416.920(c) (2022). The ALJ must consider each of the claimant's impairments and their combined effect on the claimant's ability to function, even if those impairments alone would not be considered severe. *Smolen v. Chater*, 80 F.3d 1273, 1290

5

(9th Cir. 1996). An impairment is severe unless it produces a slight abnormality which poses "'no more than a minimal effect on an individual[']s ability to work.'" *Id*. (quoting *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988)). Step two is used as a *de minimis* screening device used to weed out groundless claims. (*Id*.) A step two determination, therefore, is not meant to identify each impairment later used to determine a claimant's RFC. *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017).

Furthermore, if an ALJ fails to discuss an impairment at step two, but discusses that impairment in a later step, the ALJ has committed a harmless error. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *see also Williams v. Colvin*, 24 F. Supp. 3d 901, 917 (N.D. Cal. 2014); *Miner v. Berryhill*, 722 F. App'x 632, 633 (9th Cir. 2018). Also, harmless error can be found where an ALJ discusses a medically determinable impairment's symptoms without discussing the condition by name. *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (stating that it is not error for an ALJ to refer to a claimant's condition with a shorthand name as long as "[t]here is no indication that the ALJ misunderstood the nature of [the claimant's] impairment[].")); *see also Baldwin v. Astrue*, No. ED CV 09-513-PJW, 2010 WL 1946902, at *2 (C.D. Cal. May 10, 2010) (stating that when an ALJ includes a discussion of one condition, the symptoms of which necessarily include another, there is no harmful error). Ultimately, the Court "will not fault the agency merely for explaining its decision with 'less than ideal clarity.'" *Brown-Hunter*, 806 F.3d at 492 (quoting *Treichler v. Comm'r of Soc. Sec. Admin*., 775 F.3d 1090, 1099 (9th Cir. 2014)).

### 1.   ALJ's Evaluation of Plaintiff's Osteoporosis

First, Plaintiff argues that ALJ Treblin erred at step two by failing to consider her osteoporosis a medically determinable impairment.[4] (ECF No. 17 at 2.) Defendant counters

---

[4] The Court notes that Plaintiff did not specifically allege osteoporosis as a severe impairment that prevented work. Plaintiff merely alleged, among other issues specified in her SSI application, that she had "shoulder problems" and "back problems." (AR at 37.)

1   that ALJ Treblin was not required to consider Plaintiff's osteoporosis because a mere
2   diagnosis is not enough to establish a severe impairment. (ECF No. 19 at 2.)

3          As stated above, at step two, an ALJ is not required to identify and discuss every
4   impairment considered at step four of the RFC determination. *Buck*, 869 F.3d at 1048-49.
5   As long as the ALJ makes a finding of at least one severe impairment, a claimant is not
6   prejudiced at the step two stage and thus any error is harmless. *Stout*, 454 F.3d at 1055.
7   Here, ALJ Treblin made other findings of severe impairments. For this reason, the Court
8   finds Plaintiff was not prejudiced by ALJ Treblin's failure to consider Plaintiff's
9   osteoporosis at step two. Accordingly, the Court finds the ALJ's omission at step two was
10  harmless error.

11         During step four of a disability determination, however, the ALJ must consider "all
12  of [the claimant's] medically determinable impairments of which [they] are aware,
13  including [the claimant's] medically determinable impairments that are not 'severe.'" 20
14  C.F.R. § 416.945(a)(2) (2022); *Buck*, 869 F.3d at 1049; *see also* SSR 98–6p, 1996 WL
15  374184 (July 2, 1996). A medically determinable impairment is defined as an "anatomical,
16  physiological, or psychological abnormalit[y] that can be shown by medically acceptable
17  clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521 (2022).

18         As a preliminary matter, ALJ Treblin was aware of Plaintiff's osteoporosis
19  diagnosis. At the administrative hearing, Plaintiff's counsel highlighted osteoporosis, and
20  that Plaintiff's risk of bone fracture is heightened because of the condition. (AR at 16.)
21  Plaintiff's osteoporosis is also mentioned numerous times throughout the record. (*See* AR.)
22  For instance, DEXA scans from 2018 and 2019 state that Plaintiff is "osteoporotic" and
23  "osteopenic," respectively. (AR at 475, 482.) The 2019 DEXA scan results also show that
24  Plaintiff's neck and hip are at increased risk of fracture. (AR at 477-80.) The results can be
25  classified as abnormalities shown by a medically acceptable laboratory diagnostic
26  technique. Plaintiff's osteoporosis, therefore, could be considered a medically
27  determinable impairment.

28

However, even if the Court assumed that ALJ Treblin determined Plaintiff's osteoporosis was not a medically determinable impairment, the Court does not have a basis to affirm the argument because ALJ Treblin did not articulate any reasoning regarding osteoporosis. The Court cannot affirm on a basis not discussed by the ALJ. *Brown-Hunter*, 806 F.3at 492. Under the circumstances, the Court is precluded from making independent findings. Consequently, the Court cannot conclude that ALJ Treblin's failure to discuss osteoporosis—even to discount it as not medically determinable—was harmless error. (*Id.*) Therefore, the Court finds that the ALJ committed harmful error by not discussing Plaintiff's osteoporosis.

### 2.    ALJ's Evaluation of Plaintiff's Tendinosis of the Right Shoulder

Second, Plaintiff claims that ALJ Treblin erred at step two by failing to consider tendinosis of her right shoulder a medically determinable impairment, which Plaintiff alleges is medically classified as "severe." (ECF No. 17 at 3-4.) Defendant argues that ALJ Treblin considered Plaintiff's shoulder pain later in his decision, therefore, the ALJ did not commit harmful error. (ECF No. 19 at 3.)

Defendant correctly argues that ALJ Treblin did not specifically identify tendinosis by name, but he made several references to Plaintiff's shoulder during his step four determination. (AR at 66-68.) For instance, ALJ Treblin noted that Plaintiff had been diagnosed with "chronic pain in the shoulders" that was "stable", and that Plaintiff was being treated with medication. (AR at 66.) He further noted that one doctor found a loss of range of motion in Plaintiff's right shoulder, while another found generally normal range of motion, which was slightly reduced in some areas. (AR at 66.) ALJ Treblin also stated that at one appointment, a physician found "no deformities, erythema, warmth, swelling, effusion, or tenderness in the shoulders." (AR at 68.) ALJ Treblin further found that because of the pain in her neck and shoulder, and the side effects of her medication, Plaintiff's RFC was limited to "frequent postural activities" and to "avoiding concentrated exposure to hazards." (AR at 68.)

The Court, therefore, finds that ALJ Treblin considered Plaintiff's shoulder pain in step four of his assessment, and it was at most harmless error to omit a discussion of Plaintiff's tendinosis at step two. *See Lewis*, 498 F.3d 911 (9th Cir. 2007); *Buck*, 869 F.3d at 1049.

### 3.    ALJ's Evaluation of Plaintiff's Achilles Tendonitis

Third, Plaintiff claims that ALJ Treblin erred at step two by failing to consider achilles tendonitis a medically determinable impairment. (ECF No. 17 at 4.) Defendant argues that ALJ Treblin was not required to discuss Plaintiff's achilles tendonitis because there was no evidence to show that it prevented Plaintiff from performing medium work. (ECF No. 19 at 2.)

The Court's analysis is substantially similar to that of Plaintiff's osteoporosis. As previously discussed, since ALJ Treblin made other findings of severe impairments, failing to consider Plaintiff's achilles tendonitis at step two was, at most, a harmless error. *Stout*, 454 F.3d at 1055. However, ALJ Treblin was required to consider all medically determinable impairments at step four and as Plaintiff points out, ALJ Treblin did not mention Plaintiff's achilles tendonitis or even foot pain in his decision. (AR 57-71.) Thus, the question before the Court is whether Plaintiff's achilles tendonitis could be considered a medically determinable impairment.

Plaintiff alleges that an ultrasound report of Plaintiff's feet was sufficient to support a finding of a medically determinable impairment (ECF No. 17 at 4; AR at 428), while Defendant argues the ultrasound was "unremarkable" and implies the achilles tendonitis diagnosis did not warrant classification as a medically determinable impairment. (ECF No. 19 at 2.) Whether Plaintiff's achilles tendonitis qualifies as a medically determinable impairment relies on the ultrasound and the findings described therein as "Achilles tendon thickening" and "bilateral Achilles areas of disorganization." (AR at 428.)

The Court, however, cannot affirm on a basis not discussed by the ALJ. *Brown-Hunter*, 806 F.3at 492. Even if Defendant's contention was taken as true and the Court assumed that ALJ Treblin determined achilles tendonitis was not a medically determinable

impairment, the Court still has no basis to affirm this argument because ALJ Treblin did not articulate any reasoning regarding achilles tendonitis. Under the circumstances, the Court is precluded from making independent findings. Consequently, the Court cannot conclude that ALJ Treblin's failure to discuss achilles tendonitis—even to discount it as not medically determinable—was harmless error. (*Id*.) Therefore, the Court finds that the ALJ committed harmful error by not discussing Plaintiff's achilles tendonitis.

### 4.    ALJ's Evaluation of Plaintiff's Carpel Tunnel Syndrome

Fourth, Plaintiff claims that ALJ Treblin erred at step two by failing to consider Plaintiff's carpal tunnel syndrome. (ECF No. 17 at 5.) Defendant argues that ALJ Treblin considered Plaintiff's hand pain later in his decision, and therefore, the ALJ did not commit harmful error. (ECF No. 19 at 4.)

Defendant correctly argues that ALJ Treblin did not mention the condition by name, but he addressed Plaintiff's wrists and hands several times in his decision. (AR at 66-68.) For instance, ALJ Treblin noted two instances in which Plaintiff's hands and wrists were normal upon evaluation. (AR at 66-67.) ALJ Treblin further noted that one physician diagnosed Plaintiff with chronic pain in her hands, but this condition was stable. (AR at 66.) ALJ Treblin also reported that another physician found Plaintiff had reduced sensation in her fingers. (*Id*.)

Plaintiff, however, argues that ". . . the ALJ was required to articulate in the decision what consideration and evaluation he gave to the imaging and examinations." (ECF No. 17 at 10.) The Court is not persuaded by Plaintiff's argument that ALJ Treblin must articulate the consideration he gave to every scan in Plaintiff's medical record. (ECF No. 17 at 5.) If Plaintiff's contention were taken as true, logic would require that ALJ Treblin address every page in the record and thus every ALJ decision would be hundreds of pages long.

The Court finds that because ALJ Treblin considered Plaintiff's wrist and hand pain at step four of the assessment, under the holdings of *Lewis v. Astrue* and *Buck v. Berryhill*, it was, at most, harmless error for him to have omitted a discussion of Plaintiff's carpal tunnel syndrome at step two. *Lewis*, 498 F.3d 911 (9th Cir. 2007); *Buck*, 869 F.3d at 1049.

### 5.      ALJ's Evaluation of Plaintiff's Knee Impairment

Fifth, Plaintiff claims that ALJ Treblin erred at step two in finding Plaintiff's knee impairment not severe. (ECF No. 17 at 4-6.) As a preliminary matter, the Court finds that because ALJ Treblin considered Plaintiff's knee impairment later in his decision, under the holdings of *Lewis v. Astrue* and *Buck v. Berryhill*, it was at most harmless error for him to have omitted a discussion of Plaintiff's knee impairment at step two. *Lewis*, 498 F.3d 911 (9th Cir. 2007); *Buck*, 869 F.3d at 1049.

In his decision, ALJ Treblin determined that Plaintiff's osteoarthritis of the knees was not a severe impairment because her knees were "non-tender," had "no effusions," and her knee pain was "stable" at one appointment. (AR at 62.) In this District, if the evidence is subject to more than one interpretation, the ALJ's decision must be affirmed. *Andrews*, 53 F.3d at 1039-40 (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). Here, Plaintiff's medical records are subject to more than one interpretation because knee pain is noted several times (AR at 444, 449, 455, 549, 1025), but there are also several normal exam findings throughout the record. (*See, e.g.*, AR 435, 436, 444, 445, 449, 455, 457, 471, 472, 473, 1059, 1069, 1081, 1087, 1322.) Since multiple notes in the record indicate Plaintiff's knees were normal, ALJ Treblin's determination that Plaintiff's knees did not amount to a severe impairment must be affirmed.

Lastly, the Court addresses Plaintiff's argument that ALJ Treblin cherry picked information from the record. Plaintiff contends that one instance of wellbeing was not enough to warrant a finding of a non-severe impairment and likens ALJ Treblin's decision to "cherry picking." (ECF No. 17 at 5-7.) An ALJ cherry picks when they selectively cite to the record, ignoring evidence that contradicts their opinion. *See D.T. v. Comm'r of Soc. Sec.*, 538 F. Supp. 3d 952, 958 (N.D. Cal. 2021); *Hoffschneider v. Kijakazi*, No. 18-15504, 2022 WL 3229989, at *1 (9th Cir. Aug. 10, 2022). If the ALJ acknowledges facts adverse to their conclusion and relies on a broad set of exams, they have not cherry picked. *See D.T.*, 538 F. Supp. at 958; *Wesselius v. Kijakazi*, No. 20-35386, 2021 WL 4948928, at *1 (9th Cir. Oct. 25, 2021).

Here, ALJ Treblin acknowledged facts adverse to his determination several times. For instance, he acknowledged that Plaintiff suffered from osteoarthritis of the knees, that she visited the hospital on at least one occasion on account of her pain, and that she was diagnosed with chronic knee pain. (AR at 62, 66.) Furthermore, ALJ Treblin cites to Exhibit 2F of the record, which includes medical records containing descriptions of Plaintiff's knees between 2018 and 2020, a broad period of time. (AR at 66; ECF No. 12-1.) Therefore, the Court finds that ALJ Treblin did not cherry pick or err in finding that Plaintiff's knee impairments were non-severe.

**B.     Whether the ALJ Failed to Properly Evaluate the Medical Opinion Evidence**

Next, Plaintiff argues that ALJ Treblin erred in evaluating each medical opinion. (ECF No. 17 at 8-13.)

Although a treating physician's opinion was given controlling weight until recently, the social security rules were updated in 2017 to reflect a modernized view on the weight properly given to each medical opinion. *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022). Now, the ALJ must evaluate the persuasiveness of medical source opinions by considering prescribed enumerated factors. 20 C.F.R. §§ 404.1520c(c)(1)-(5); 416.920c(c)(1)-(5). The "most important factors" considered are consistency and supportability. *Id.* §§ 404.1520c(b)(2); 416.920c(b)(2). The regulations describe supportability as: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Consistency is described as: "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

Factors that detract from a medical opinion's persuasiveness include extreme evaluations that do not comport with the rest of the evidence on record, opinions that

contradict the medical source's records, and "check off reports" that contain little or no explanation of their conclusion. *Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023). According to the new rules, the "treating physician" factor is still relevant, but an ALJ is not required to share how they considered the treating physician factors. *Woods*, 32 F.4th at 792.

Here, ALJ Treblin found some of the medical opinions' persuasive, and others not persuasive. Courts equate finding a medical source "not persuasive" with rejecting a medical opinion. *See, e.g.*, *Woods v. Kijakazi*, 32 F.4th 785, 792-94 (9th Cir. 2022); *Steven R. T. v. Kijakazi*, No. 20-CV-2257-KSC, 2022 WL 2303950, at *12 (S. D. Cal. June 24, 2022). "An ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must "articulate ... how persuasive" it finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability and consistency factors" in reaching these findings, *id.* § 404.1520c(b)(2)." *Woods*, 32 F.4th at 792. "[T]o determine the persuasiveness of a medical opinion the court must evaluate whether the ALJ properly considered the factors as set forth in the amended regulations." *Tanya L. L. v. Comm'r of Soc. Sec.*, 526 F. Supp. 3d 858, 866 (D. Or. 2021).

The Court examines the ALJ's evaluation of Dr. Guefen, Dr. Tran, Dr. Kalmar, and Dr. Gleason's medical opinions below.

### 1. Dr. Guefen

Dr. Guefen has been Plaintiff's treating physician for four years. (AR at 299.) Dr. Guefen opined the following regarding Plaintiff's limitations:

> [Plaintiff] has no ability to lift and/or carry, stand/walk for 2 hours in an 8-hour work day and sit for 6 hours in an 8-hour work day, should alternate between standing and sitting every 15 to 20 minutes; zero ability to climb, balance, kneel, crouch, crawl, no handling and no fingering, and would be absent from work more than three times per month. (AR at 68.)

Plaintiff argues that ALJ Treblin erred in finding Dr. Guefen's opinion not persuasive because Dr. Guefen was her treating physician, and his opinion was entitled to

more weight than those of Drs. Tran, Kalmar, and Gleason. (ECF No. 17 at 8.) However, as discussed above, under the new social security regulations, a treating physician's opinion is entitled to no more weight than any other source. Plaintiff misconstrues the new regulations, which allow for consideration of a treatment relationship, but do not require that the ALJ articulate how they considered this factor. 20 C.F.R. § 404.1520c(b)(2) (2022); *Woods*, 32 F.4th at 792.

Plaintiff also argues that ALJ Treblin erred in finding Dr. Guefen's opinion not persuasive because it is consistent with other medical evidence in the record such as a DEXA scan showing osteoporosis, scans showing severe tendinosis of the right shoulder, achilles tendonitis, carpal tunnel syndrome, and bilateral knee osteoarthritis. (ECF No. 17 at 13.) Defendant counters that Dr. Guefen's opinion is inconsistent with the record, and even if Plaintiff has a different interpretation of the record, the Court must affirm as long as there is substantial evidence supporting the ALJ's decision. (ECF No. 19, at 5-6; *Andrews*, 53 F.3d at 1039-40.)

In reaching his decision, ALJ Treblin concluded that Dr. Guefen's opinion was not persuasive because it was "overly restrictive" and thus inconsistent with other medical evidence in the record. (*Id.*) In support of this finding, ALJ Treblin discussed the opinions of Drs. Tran, Lin, and a relevant MRI scan, which noted normal extremity strength, grip strength, and gait, as well as normal range of motion in the lumbar spine and flexion and abduction of the right shoulder. (*Id.*) ALJ Treblin further described Plaintiff's range of motion and extension of the cervical spine, and reduced range of motion of the right shoulder. (*Id.*) As Defendant points out, many of Plaintiff's medical assessments showed a normal or close to normal range of motion, while Dr. Guefen's assessment concluded that Plaintiff was essentially unable to physically exert herself, which is not consistent with the bulk of the record. (ECF No. 19 at 5, 6.) For this reason, the Court finds that there is substantial evidence for finding Dr. Guefen's opinion not persuasive under the consistency factor.

However, ALJs are required to articulate the supportability and consistency factors of a medical source when determining its persuasiveness. *Tanya L. L.*, 526 F. Supp. at 866; *see also Woods*, 32 F.4th at 792. Although ALJ Treblin discussed how Dr. Guefen's opinion was inconsistent with other medical evidence in the record, he failed to evaluate the supportability factor that affected his analysis of Dr. Guefen's opinion. (AR at 67-68.) ALJ Treblin only identified Dr. Guefen's findings and presented other medical evidence that was inconsistent with Dr. Guefen's opinion. (AR at 67-68.) He did not explain whether Dr. Guefen's opinion was supported by relevant medical evidence. *Tanya L. L.*, 526 F. Supp. at 866. Therefore, the Court finds that ALJ Treblin erred by failing to articulate the supportability factor in finding Dr. Guefen's opinion not persuasive. (*Id.*)

### 2. Dr. Tran

On September 23, 2020, Dr. Tran performed an independent medical examination on Plaintiff. (AR at 66.) Dr. Tran stated that Plaintiff had the following capabilities:

> [Plaintiff can] lift up to 50 pounds occasionally and no more than 25 pounds frequently; stand/walk for 6 hours in an 8-hour work day and sit for 6 hours in an 8-hour work day; and [was] able to frequently perform postural activities." (AR at 67.)

ALJ Treblin found Dr. Tran's opinion generally persuasive because she directly examined Plaintiff and her opinion was consistent with the bulk of the record, including notes from other treating physicians. (AR at 67-68.) Plaintiff, however, alleges that Dr. Tran's medical opinion was not a persuasive because "Dr. Tran's opinions are not well-supported by her own clinical findings." (ECF No. 17 at 9.)

Plaintiff cites two studies in an attempt to disqualify Dr. Tran's findings, stating that these studies prove Plaintiff's exertional limitations do not align with the amount of weight Dr. Tran opined Plaintiff could carry. (ECF No. 17 at 9-10.) However, if represented by counsel, Plaintiffs must raise all evidentiary issues at their ALJ hearing to preserve these issues for appeal. *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999), *as amended* (June 22, 1999). Although Plaintiff's attorney described Dr. Tran's findings as "not well supported" during the hearing, she did not introduce the evidence Plaintiff is seeking to

rely on in her argument. (AR at 16.) Because the ALJ is in the optimal position to resolve conflicts of evidence, the Court will not determine evidentiary issues that have not been raised at hearing. *Id.*; *see also Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017). If Plaintiff wanted this evidence addressed, she should have presented it to the ALJ at her hearing.

Plaintiff also argues that because Dr. Tran did not review Plaintiff's medical records, her opinion cannot be persuasive. (ECF No. 17 at 10.) However, authority suggests that Consultative Examiners ("CE") such as Dr. Tran are not required to review medical records because a CE's opinion rests on their own examinations. *Bozicevic v. Comm'r of Soc. Sec. Admin.*, No. CV-20-00984-PHX-JJT, 2021 WL 5231669, at *5 (D. Ariz. Nov. 10, 2021) (citing *Castaneda v. Astrue*, 344 Fed. App'x 396, 398 (9th Cir. 2009)). As such, the Court finds this argument unpersuasive.

Lastly, Plaintiff argues that Dr. Tran's opinion was only found persuasive because of ALJ Treblin's impermissible cherry picking. (ECF No. 17 at 9-10.) In his decision, ALJ Treblin stated that he found Dr. Tran's opinion generally persuasive because it was "consistent with the bulk of the evidence in the record." (AR at 67.) He acknowledged Dr. Tran's findings of mild reduction in range of motion in Plaintiff's cervical spine, and mild reduction in range of extension, while noting several instances in which Plaintiff presented normally upon exam. (AR at 66-68.) For example, ALJ Treblin noted that at one visit, Plaintiff had "no deformities, erythema, warmth, swelling, effusion, or tenderness in the shoulders, elbows, wrists, hands, fingers." (AR at 68.) At another appointment, Plaintiff had 5/5 strength in all extremities. (*Id.*) Plaintiff further "ambulated without assistance." (*Id.*) ALJ Treblin concluded that, overall, Dr. Tran's findings failed to show Plaintiff had disabling limitations. (AR at 66.) In discussing these specific instances in which the Plaintiff exhibited normal functions, ALJ Treblin also acknowledged Dr. Tran's findings of "some impairments" and "some limitations." (*Id.*) Therefore, the Court finds that ALJ Treblin did not impermissibly cherry-pick.

However, ALJs are required to articulate their findings on the supportability and consistency of a medical source. *Tanya L. L.*, 526 F. Supp. at 866; *see also Woods*, 32 F.4th at 792. Although ALJ Treblin discussed how Dr. Tran's opinion was consistent with other medical evidence in the record, he failed to evaluate the supportability factor that affected his analysis of Dr. Tran's opinion. (AR at 67-68.) ALJ Treblin did not identify any specific evidence that led him to believe that Dr. Tran's opinion was supportable. (*Id*.) ALJ Treblin simply identified Dr. Tran's findings and presented other medical evidence that was consistent with Dr. Tran's opinion. (AR at 67-68.) Therefore, the Court finds that ALJ Treblin erred by failing to articulate the supportability factor in his evaluation of Dr. Tran's opinion.

### 3.   Dr. Kalmar

Dr. Kalmar is a disability determination services ("DDS") medical consultant who was hired to review Plaintiff's medical records. (AR at 68; ECF No. 17 at 16-17.) Dr. Kalmar found that Plaintiff was not disabled because she could perform medium work, based on the following capabilities. (AR at 32-34.)

> [Plaintiff can] lift up to 50 pounds occasionally and no more than 25 pounds frequently; stand/walk for 6 hours in an 8-hour work day and sit for 6 hours in an 8-hour work day. (AR at 68.)

ALJ Treblin found Dr. Kalmar's opinion generally persuasive ". . . because the conclusions are supported by, and consistent with, the objective medical evidence in the record." (AR at 68.) However, Plaintiff argues that ALJ erred in finding Dr. Kalmar's opinion persuasive because Dr. Kalmar did not review all medical records available. (ECF No. 17 at 11.)

Plaintiff cites to *Maliha K. v. Saul* in support of her argument, but she fails to note that within the same paragraph of the text she relies on, the opinion states "the fact that a non-examining state agency physician fails to review the entire record does not, by itself, mean that his or her opinion cannot serve as substantial evidence." *Maliha K. v. Saul*, No. 8:19-CV-00877-MAA, 2020 WL 2113671, at *6 (C.D. Cal. May 4, 2020) (citing *Owen v.*

*Saul*, 808 F. App'x 421, 424 (9th Cir. 2020)). If, however, the non-examining physician does not have the opportunity to review later evidence that undermines their opinion, the opinion cannot be persuasive. *Patricia C.*, 2020 WL 4596757, at *20. This occurs when evidence post-dating the non-examining physician's opinion is not consistent with the opinion. *Maliha K.*, 2020 WL 2113671, at *6.

The issue then turns on whether the evidence arising after Dr. Kalmar's opinion contradicts his opinion and whether Dr. Kalmar's opinion is supportable and consistent. Based on Dr. Tran's opinion in September 2020, showing mostly normal findings and Dr. Gleason's affirmation of Dr. Kalmar's opinion in February 2021, the Court concludes that there were no further contradictory opinions. (*See* AR at 68.) Therefore, the ALJ did not err by finding Dr. Kalmar's opinion persuasive even though Plaintiff's medical records were not fully reviewed.

However, ALJs are required to articulate their findings on the supportability and consistency of a medical source. *Tanya L. L.*, 526 F. Supp. at 866; *see also Woods*, 32 F.4th at 792. ALJ Treblin outlined several consistency factors, including extensive cites to Dr. Tran's opinion and notes from Dr. Harry Ellison, which "revealed no neurological deficits upon exam and that the claimant was able to ambulate without assistance." (AR at 66, 68.) However, ALJ Treblin failed to outline any evidence establishing supportability in his decision. (AR at 68.) He included a general statement that the opinions of "the DDS medical consultants are generally persuasive" because their conclusions are "supported" by medical evidence in the record, but he did not mention any specific evidence that led him to believe Dr. Kalmar's opinion was supported by the medical record. For this reason, the Court finds that ALJ Treblin erred by failing to articulate the supportability factor in his evaluation of Dr. Kalmar's opinion.

### 4. Dr. Gleason

Dr. Gleason is a DDS medical consultant who was hired to review Plaintiff's medical records on reconsideration, and who affirmed Dr. Kalmar's initial finding that Plaintiff could perform medium work. (AR at 45-52, 68.) ALJ Treblin found Dr. Gleason's opinion

generally persuasive ". . . because the conclusions are supported by, and consistent with, the objective medical evidence in the record." (AR at 68.)

Plaintiff argues that ALJ Treblin erred by finding Dr. Gleason's opinion persuasive because substantial evidence does not support his decision. (ECF No. 17 at 12.) Specifically, Plaintiff argues that Dr. Gleason erred in finding that Plaintiff had full range of motion in her spine and extremities, Plaintiff was "neuro intact," and osteoporosis should not be included in Plaintiff's RFC because she did not allege it prevented work. (*Id.*)

Although Dr. Gleason did determine Plaintiff had a wider range of motion than other sources, ALJ Treblin did not err in relying on Dr. Gleason's opinion simply because Dr. Gleason came to a different conclusion in this regard. Furthermore, ALJ Treblin did not follow this portion of Dr. Gleason's opinion, since ALJ Treblin acknowledged several times that Plaintiff had a reduced range of motion in extension of the right shoulder, and reduced range of motion in the cervical spine. (AR at 68.) The same analysis applies to Dr. Gleason's statement that Plaintiff was "neuro intact." ALJ Treblin noted instances in which Plaintiff was found "grossly" neurologically intact, "did not display neurological deficits upon exam," and reported decreased sensation, but had no neurological deficits otherwise. (AR at 67.) Therefore, these instances in which ALJ Treblin found Plaintiff had more limitations than Dr. Gleason's conservative physical limitations were not prejudicial to Plaintiff and were, if anything, harmless error. Moreover, Defendant states—and the Court agrees—that Plaintiff did not properly allege osteoporosis as disabling, but Dr. Gleason nevertheless considered the records pertaining to Plaintiff's osteoporosis. (ECF No. 19 at 8; AR at 43, 45.) For the reasons set forth above, ALJ Treblin did not err in finding Dr. Gleason's opinion persuasive.

However, ALJs are required to articulate their findings on the supportability and consistency of a medical source. *Tanya L. L.*, 526 F. Supp. at 866; *see also Woods*, 32 F.4th at 792. ALJ Treblin failed to outline any evidence establishing supportability in his decision. (AR at 68.) As stated above, he included a general statement that the opinions of "the DDS medical consultants are generally persuasive" because their conclusions are

"supported" by medical evidence in the record, but he did not identify any evidence that led him to believe Dr. Gleason's opinion was supported by the medical evidence. For this reason, the Court finds that ALJ Treblin erred by failing to articulate the supportability factor in his evaluation of Dr. Gleason's opinion.

**C.    Whether the ALJ Properly Determined Plaintiff's RFC**

Lastly, Plaintiff claims that ALJ Treblin erred in determining her RFC based on the earlier errors at step two and when assigning weight to the opinions of Dr. Guefen, Dr. Tran, Dr. Kalmar, and Dr. Gleason. (ECF No. 17 at 13.) However, this is merely a recharacterization of Plaintiff's first five arguments. Because the Court discussed the issues at length above, they do not warrant further review at this stage. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008); *Kitchen v. Kijakazi*, 82 F.4th 732, 742 (9th Cir. 2023) (deciding that restated arguments need not be reviewed if already discussed).

## VI.    CONCLUSION AND RECOMMENDATION

The only remaining question for the Court is whether to remand for further administrative proceedings or for the payment of benefits. "The decision of whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court." *Trevizo*, 871 F.3d at 682 (quoting Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). A remand for an immediate award of benefits is appropriate only in rare circumstances. *Leon v. Berryhill*, 874 F.3d 1130 (9th Cir. 2017). The Court concludes that "[t]he rare circumstances that result in a direct award of benefits are not present in this case." (*Id.*)

Instead, the Court finds further administrative proceedings would serve a meaningful purpose. On remand, ALJ Treblin must: (1) expressly evaluate Plaintiff's osteoporosis and achilles tendonitis, and (2) evaluate and explain the supportability factor in discussing each medical opinion. Specifically, ALJ Treblin must establish whether Plaintiff's osteoporosis and achilles tendonitis are medically determinable impairments and if so, determine

Plaintiff's RFC with consideration to the impairments. Furthermore, ALJ Treblin must discuss the supportability factor in finding the medical opinions of Dr. Guefen, Dr. Tran, Dr. Kalmar, and Dr. Gleason, persuasive or not persuasive. All reasons set forth by ALJ Treblin's decision must be clearly articulated so that any subsequent reviewer can assess how the ALJ evaluated the claimant's symptoms and the record. *Stout*, 454 F.3d at 1054; *Brown-Hunter*, 806 F.3d at 492.

Based on the foregoing, the Court **RECOMMENDS** that the District Court **VACATE** the ALJ's decision and **REMAND** this case for further administrative proceedings consistent with the findings presented herein.

**IT IS HEREBY ORDERED** that any written objection to this report must be filed with the Court and served on all parties no later than **December 29, 2023**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **January 12, 2024**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: December 14, 2023

Hon. Steve B. Chu
United States Magistrate Judge